UNION BANK OF LOUISIANA, COMPLAINANTS AND APPELLANTS, *v.* JOSIAH S. STAFFORD AND JEANNETTA KIRKLAND, HIS WIFE, DEFENDANTS.

The 25th section of the law of Louisiana incorporating the Union Bank of Louisiana declares that in all hypothecary contracts and obligations entered into by any married individual with the bank, it shall be lawful for the wife to unite with him; and

· in such case the property of the wife, whether dotal or of any other description, shall be affected by the contract.

Where a wife united with her husband in mortgaging property to the bank, the mortgage was good under this clause.

A sale of the mortgaged property for a twelve months' bond under an order of seizure and sale was not a novation or extinguishment of the original mortgage.

Where the mortgage is payable by instalments, some of which were not due at the filing of the bill, the statute of limitations will not apply. The possession of the mortgagor was not adverse to the mortgagee.

Where other parties had a nominal interest as defendants, and resided beyond the jurisdiction of the court, it was error in the Circuit Court to dismiss the bill because they were not made parties. Under the act of Congress of 1839, the court should have gone on to decree against the actual defendants; and in this case all who have a beneficial interest are in court.

THIS was an appeal from the District Court of the United States for the District of Texas.

The facts are set forth in the opinion of the court, to which the reader is referred.

It was argued by *Mr. Hale* and *Mr. Coxe* for the appellants, and *Mr. Harris* for the appellees.

The points made by the appellants' counsel were the following : —

IV. The matters of defence set up by Mrs. Stafford are not sufficient to prevent this court from pronouncing a decree against her. The first of her defences consists of the bar of the statute of limitations of Texas, passed Feb. 5, 1841, which provides "that all actions of debt grounded upon any contract in writing shall be commenced and sued within four years next after the cause of such action accrued and not after," and "that if any person against whom there is or shall be cause of action, is or shall be without the limits of this republic at the time of the accruing of such action, or at any time during which the same might have been maintained, then the person entitled to such action shall be at liberty to bring the same against such person or persons after his or their return to the republic, and the time of such persons' absence shall not be accounted, or taken as a part of the time limited by this act. Hartley's Dig. sects. 2377, 2395.

1. This plea is not applicable to an equitable demand of this nature. The debt may be barred, and yet the right to foreclose subsist. Bank of Metropolis *v.* Guttschlick, 14 Pet. 20, 32 ; Thayer *v.* Mann, 19 Pick. 536 ; Baldwin *v.* Norton, 2 Conn. R. 163 ; Clark *v.* Bull's Ex'r. 2 Root, 329 ; 1 Powell on Mort. 392 *a*, 396 *b* ; Angell on Lim. 494, note 1 ; Elmendorf *v.* Taylor, 10 Wheat. 152 ; Case of Cholmondeley *v.* Clinton, explained by Stewart *v.* Nichols, 1 Tamlyn, 207.

2. The fact that the bill was filed within four years after the

removal of the defendants to Texas, is sufficient of itself to remove the bar; and the language of the 22d section of the act has always hitherto been construed to apply to strangers. Southerst v. Graeme, 3 Wills, 145; 5 Bac. Ab. 236; Dwight v. Clark, 7 Mass. 518; Bulger v. Roche, 11 Pick. 39, 40; Little v. Blunt, 16 Id. 363; Ruggles v. Keeler, 3 Johns. 257; Chomqua v. Mason, 1 Gall. 344, 346; Estis v. Rawlins, 5 How. Miss. 258; Hysinger v. Baltzell, 3 Gill & Johns. 158; Sissons v. Bicknell, 6 N. Hamp. 557; Dunning v. Chamberlin, 6 Verm. 127; Case v. Cushman, 1. Penn. State R. 241; King v. Lane, 7 Mis. R. 241.

3. The opposite construction given to the 1st and 22d sections of the act by the Supreme Court of Texas, will not be followed by this court, because it would give the act an extra-territorial effect, is contrary to reason, and cannot apply to cases within the chancery jurisdiction of the United States. And this court has never held a less period than twenty years as sufficient to bar the enforcement of a trust or equitable demand. Reimsdyk v. Kane, 1 Gall. 380, 381; Boyle v. Zacharie, 6 Pet. 659; Robinson v. Campbell, 3 Wheat. 212; United States v. Howland, 4 Id. 108; Fletcher et al. v. Morey, 2 Story, 567; Gordon v. Hobart, 2 Sumn. 402; Flagg v. Mann, Id. 544; Thomas v. Hatch, 3 Id. 176; Bellows v. Peck, 3 Story, 434; Hughes v. Edwards, 9 Wheat. 489; Elmendorf v. Taylor, 10 Id. 162; Prevost v. Gratz, 6 Id. 481; Michoud et al. v. Giroud et al. 4 How. 561; Dexter et al. v. Arnold, 1 Sumn. 110; Gordon et al. v. Hobart et al. 2 Id. 401; Gould v. Gould et al. 3 Story, 536; Piatt v. Vattier, 1 McLean, 160, 162; Rhode Island v. Massachusetts, 15 Pet. 233.

4. The terms of the obligation and mortgage of 1841, show that a new cause of action accrued on the failure to pay each successive instalment, as they became due; and such a cause of action did therefore accrue within four years before filing the bill. 1 Pothier, Obl. Evans, 404; Baltimore Turnp. Co. v. Barnes, 6 Harr. & J. Rep. 57; Angell on Lim. 105. And the running of the time was sufficiently interrupted by the proceedings upon the twelve months' bond of William M. Stafford against the mortgaged slaves, in February and March, 1845. Print. R. 350, 354, 440, 441, 444,

5. The complainants have used all the diligence in their power, under the circumstances of the case, to enforce their demand, and are not culpable for laches.

V. The defence of coverture is also insufficient, because by the laws of Louisiana, Mrs. Stafford was authorized to become surety for her husband's debts by renouncing her privileges; and by the charter of the bank, she was specially empowered to do

28*

so; and there is no satisfactory proof of her separate interest in the property.

Beauregard's Ex'rs v. Piernas and wife, 1 Mart. 294; Brognier v. Forstall, 3 Mart. 577; Chappellon and wife v. St. Maxent's heirs, 5 Mart. 167; Perry v. Grebeau, 7 Mart. 489; Banks v. Trudeua, 2 N. S. 39; Tremé v. Lanaux's Syndic, 4 N. S. 230; Drew v. His Creditors, 4 N. S. 659; Civ. Co. La. sect. 2412; Gasquet v. Dimitry, 9 La. R. 586; Act of La. March 27, 1835; Bank of La. v. Farrar and wife, 1 Ann. R. 49; Mechanics and Traders Bank v. Rowley, Ann. R. 1847, 373; Farrar v. N. O. Gas-light Co. Ann. R. 1847, 874; Bein v. Heath, 6 How. 223; Print. R. 309, 323, 324; Civ. Co. La. sect. 2403; Bertie v. Walker, Sheriff, 1 Rob. 431; Civ. Co. La. sect. 2355; Babin v. Brosset, 11 La. R. 59; Lasé v. Dimitry, 7 La. R. 479.

VI. The defence resting on the ground that the order of seizure and sale on the mortgage of 1841, was a merger of the debt, is simply absurd; the mortgage itself being the judgment, and the order the mere mode of executing it. Code Pr. La. sect. 732, 733, 734.

VII. The defence set up in argument that the mortgage lien was discharged by the sale in 1843 to William M. Stafford, cannot be sustained; because, 1st, the facts are not pleaded as constituting such defence nor for that object. 2 Dan. Ch. Pr. 815; Cline v. Beaumont, 13 Jur. 326.

2d. Because the sale is not proved, the sheriff's return being fatally defective in not showing a compliance with the Code of Practice of Louisiana, in the particulars mentioned in the objections filed by the counsel for the complainants, and no act of sale having been produced. Patterson v. Gaines and wife, 6 How. 601; Code Pr. La. sect. 664, 665, 666, 667, 671, 681 682; Lawrence, syndic, v. Bowman, 6 Rob. 21; Duke v. Routh, Ann. R. 1847, 385, 386; Wright v. Higginbottom, 10 Rob. 30; Code Pr. La. sect. 691–698; Dufour v. Camfrane, 11 Mart. R. 675, 706, 709.

3. Because a sheriff's sale for credit, on a twelve months' bond for the payment of the price, cannot, by the laws of Louisiana, or the Constitution of the United States, extinguish the debt or release the mortgage lien. Civil Co. La. sects. 2186, 2188; Pothier on Obl. Nos. 559, 564; Mülenbruch, Doct. Pand. sect. 475; Just. II. 29, 3; Partidas, V. 14, 15; Bouillo, syndic, v. Merle et al. 9 La. R. 216, 224; Pointz et al. v. Duplantier, 2 Mart. 178, 331; Williams v. Brent, 7 N. S. 205; Reboul's Heirs v. Behren et al. 9 La. R. 90; Turner v. Parker et al. 10 Rob. 154; Dunlap v. Sims, 2 Ann. R. 1847, 239; Const. U. S. art. 1, sect. 10; and the language of the case of Offut v. Hendsley et al. 9 La. Rep. 1, is readily explained, and only applies when the twelve months'

bond is paid. Troplong, Comm. de Priviléges, No. 996 et seq. compared with Nos. 720, 721; Civ. Co. La. sect. 3374; Code Nap. 2180; Dig. XX. 6 fr. 6, sect. 1, 2 (Ulpian); Mackeldey, Mod. Civ. Law, vol. 1, 399.

VIII. The objection to the want of M'Waters, William M. Stafford, and Thomas, as parties, is also unavailing, as their interest is not sufficiently proved, and they reside out of the jurisdiction of the court, and have not, although apprised of the pending of the suit, made themselves parties voluntarily. The act of Congress of Feb. 28, 1839, was intended to provide for all such cases, and introduces a more indulgent rule. Answer of Mrs. Stafford, Print. R. 122, 123; Story,1 Eq. Pl. sect. 79, 135; Mallow *v.* Hinde, 12 Wheat. 193; Depositions of Thomas and M'Waters. Print. R. 378, 383; Act of Congress, Feb. 28, 1839, Ch. 36, sec. 1 (15 Stat. at Large, 321); Rules in Chancery, xlvii.; McCoy *v.* Rhodes, 11 How. 41.

As to M'Waters, the conveyance in trust to him was not proved, and the trust property and beneficiary are both within the jurisdiction of the court; no decree is sought against him personally.

As to William M. Stafford, he has parted with all the interest he ever had, and in fact he possessed none, never having paid the price bid for the slaves at the sheriff's sale.

As to Isaac Thomas, he sets up no interest, and is shown to have divested himself of all title. The Canal Bank appears to be the only party concerned under Thomas's purchase in 1840, and the rights of the two banks, which are prosecuting their suits together, and unite in holding by the receiver, the property in dispute, may be settled in the District Court. The sale to Thomas, being under a mortgage given by Mrs. Stafford in 1836, when she was a minor, is inferior to the title of the complainants under their mortgage of 1837, ratified in 1841, the ratification relating back even against third parties. Troplong, Comm. de Priviléges Nos. 495, 496, seq.

IX. The last objection material to be noticed is that no relief can be given, as the title to about forty-eight of the slaves appears to be in other persons than the defendants; and there is nothing to show what particular slaves are thus exempt from the operation of the mortgage. In answer to this we say, that the defendants set up title to all the slaves in themselves, and cannot avail themselves of this objection. Also that the ground of the objection is not true, since the mortgage of 1837, being ratified, binds the defendants, and the title to the slaves referred to purchased by Thomas in 1840, is not shown ever to have legally passed from them. If any party is interested in these slaves it is the Canal Bank, and the contending claims of the

two banks may be decided by a reference to a master in the District Court. Thomas having left the slaves once claimed by him in the possession of the defendants, without reasserting his claim, or recording his conveyance in Texas, these slaves fall again within the mortgage of the Union Bank. Act of Texas, Feb. 5, 1840, sect. 12; Hartley's Dig. sect. 2774.

It is also insisted that the state of the case cannot prevent a decree, even upon the ground taken by the defendants; and that in any event this court would not dismiss the bill, but remand the cause, with leave to take further proof, and to make parties, if necessary. Doddridge v. Washington's Ex'rs, 2 Pet. 370; Hunt v. Wickliffe, Id. 201; Caldwell v. Taggart et al. 4 Id. 190.

X. Should a decree be rendered for the appellants in this court, they are clearly entitled, under their prayer for general relief, to the application of the hire of the slaves while in the possession of the receiver, amounting now to about $15,000, to be appropriated to the satisfaction of the mortgage debt. Boone v. Chiles, 10 Pet. 177; Caldwell v. His Creditors, 9 La. Rep. 267; Skillman and Wife v. Lacy, 5 N. S. 52; Hutching's Widow and Heirs v. Johnson's Heirs, 19 La. Rep. 437; Troplong, Comm. de Priviléges, Nos. 404, 697, 778, 840. 2; Expropriation Forcée, No. 29; Proudhon, Dom. de Propriété, Nos, 92, 95, 719; Dig. XX. 1 fr. 16, sect. 4; Civ. Code La. sect. 461, 467, 537, 3148, 3371.

*Mr. Harris*, for the appellees contended, that the court below ought not to have taken jurisdiction of this cause, because the proper and necessary parties have not been, and cannot be, made. It is submitted that Isaac Thomas, in his own right, and as the executor of M. P. Flint, has an interest in this case. The mortgage to Thomas and Flint is anterior to that of the bank, and their rights and claims were not released or renounced by what was done, but merely postponed. They only agreed that the bank should have a preference over them, but they have an adverse interest to that institution, in adjusting the amount for which this preference shall exist. They have also the right to avail themselves of any act of the bank, or its agents, since the confirmatory act of 1841, which might tend to defeat the claim of the complainants entirely, and bestow upon them their original preference. For this purpose, it is contended, they could make any defence to the action. Besides, the mortgage shows Isaac Thomas has a prior claim to about forty-eight of the said slaves.

Mr. Stafford is also a proper and necessary party. He, at the instance of the bank, purchased the property in controversy, under the same mortgage which the plaintiffs are now endea-

voring a second time to foreclose. This they are seeking to do, in the absence of any allegation in the bill that this sale to William M. Stafford is either void or voidable. The record not only discloses the fact that the sale of this property was, at the instance of the bank, made to William M. Stafford, but that he has made a partial payment of the purchase-money, and has received a credit therefor. Can the bank cause the sale to be made ? Can it subsequently in effect confirm it, by receiving (and still holding) a portion of the purchase-money; and can it then, in a court of equity, treat this sale as a mere nullity ? Under such circumstances, it is most respectfully submitted, that William M. Stafford ought not to be passed by as an unnecessary party to this cause.

It is conceived to be not less obvious that James A. M'Waters, the trustee to whom this property was conveyed by William M. Stafford, ought not to be regarded as an unnecessary party.

The first and third answers of Mrs. Stafford to the interrogatories propounded to her by the complainant, and the evidence of Frey and Frenet prove that the obligation and mortgage were not given in consideration of money loaned by the bank.

Exhibit No. 4, and the sheriff's return, show that this mortgage was foreclosed, and that William M. Stafford purchased the slaves in controversy.

By the art. 2412 of the La. Code, (notwithstanding art. 2256,) the wife cannot in any manner bind herself for the debts of her husband. The true nature of the contract, (whatever may be its form,) will be inquired into under the laws of Louisiana, where this was made and executed. 2d N. S. Martin's Rep. 39; 5th Id. 431; 7th Id. 252; 8th Id. 693; 9 La. Rep. 590; 10th Id. 147.

In the year 1824 the Civil Code of Louisiana was adopted by the legislature, and it went into effect in June, 1825, containing the article 2412. This was but a reënactment of the old law. At the same session of the legislature the Bank of Louisiana was chartered. A clause was inserted in this charter, permitting married women to become bound with their husbands in certain obligations to that institution. It is submitted that this being an exception to the general law, should be strictly construed. A similar provision was accorded to several other bank charters; and in 1832 the Union Bank was created. By the 25th section of the act, it is provided that in all hypothecary contracts and obligations entered into "according to the true intent and meaning of this act," it shall be lawful for the wife to bind herself with her husband, &c. So she can only bind herself in an hypothecary contract made according to the intention of the charter.

The first class of these hypothecary contracts was such as is

contemplated by sections 2, 3, 4, 8, and to these the 25th section would apply. But Stafford and wife not being stockholders, the provisions of these sections cannot be made to apply to this case.

The next class to which the 25th section was intended to apply, was hypothecary contracts of the husband and wife for the loan of money from the bank. By the laws of Louisiana, a bank cannot loan any thing but specie or its own notes, the representatives of specie. It cannot pay out the notes of another bank at its counter, consequently it cannot make a loan of them. Then, with much less propriety could it be said, it would loan or pay out, in this instance, the insolvent obligations of Thomas Barrett & Co. See article 12 Louisiana Code, 4th Louisiana R. 57; 6th Id. 243; and article 2412 of the code, which is a prohibitory law. These, construed in connection with the 25th section of the charter, it is submitted that, under the laws of Louisiana, Mrs. Stafford was not bound by the contract of 1837 or that of 1841.

It is further contended that the original debt of Stafford and wife (if any ever existed) was extinguished by novation, one of the modes by which obligations may become extinct. See Louisiana Code, art. 2126 and 2181, and notes in Pothier on Obligations, part 3, chap. 2, No. 546, vol. 1, 339.

The debt (if any) being extinguished as prescribed by art. 2,126, the mortgage being only a security for its payment, must also be extinguished. See articles 3251, 3252, 3374, Louisiana Code.

If a debt ever existed it was extinguished by novation, accoring to the provisions of art. 2185 Louisiana Code. See also Barrow v. How, 2d N. S. Mart. Rep. 144, where a creditor took a note in payment of an account, &c.; also, Abat, &c. v. Nolte, &c., 6th N. S. 637, and Hunt v. Boyd & Co. 2d Louisiana R. 111; also art. 2185 Louisiana Code, and Pothier, No. 563, p. 39. The two last authorities show, when taken in connection with the evidence of Mr. Frey, the cashier, and that of the other witnesses, that the bank, by its agreement and its action in execution thereof, made William M. Stafford its new debtor in the place of J. S. Stafford and wife, and thereby discharged the liability of the latter. By agreement the purchaser was to pay by instalments.

It is contended that the sale of the property by the bank to William M. Stafford, by virtue of an execution and under an agreement with the purchaser, that he was to give no security upon his twelve months' bond, (which the law required should be given,) fully released the defendants from all liability which might have existed on account of said debt. See 3d Robinson

Rep. 156; case of Overton v. Ricaud, in Ann. Rep. 1847, No. 9, page 805; and Co. Pract. art. 681.

It will be seen by the testimony of Mr. Frey, that a payment was made by William M. Stafford, the purchaser, and a credit given on his twelve months' bond by the bank.

When William M. Stafford became the purchaser of this property, independently of his special contract with the bank, the law would have created a new debt and a new security. Code of Practice, art. 681. In case the new agreement was not complied with, execution must have issued on the bond, and not on the original mortgage. 10 Martin's Rep. 425; Code Prac. art. 719, 720; see also art. 703, 705; 9 La. Rep. 92; Bullard and Curry's Dig. 435, sect. 15.

The record shows that when William M. Stafford purchased the slaves, he also purchased a plantation, belonging to J. S. Stafford and wife. Upon the twelve months' bond the bank issued an execution, sold this as the property of William M. Stafford, and became the purchaser of it. Then the bank understood William M. Stafford to be the debtor, and treated him accordingly. If he acquired title to the land by purchase under this execution, why did he not acquire a title to the slaves also? They were purchased at the same time, and under the same execution. La. Code, art. 3252.

But it is contended, that though, in this instance, the debt might exist, the mortgage would be extinguished. La. Code, art. 3374; 6th La. Rep. 283.

If the sale had been irregular it would be contended that the bank could not annul or attack it. For it was made at the instance and under the directions of the bank, and that institution, as the warrantor of Mr. William M. Stafford, is bound to make his title valid. La. Code, art. 2599, and authorities cited under it. The sale on execution transfers the property of the thing to the purchaser. La. Code, art. 2508; C. Prac. art. 711; 4 La. R. 9, 10; Martin's Rep. 222.

By taking out execution on the twelve months' bond the plaintiff ratified this sale. La. Code, arts. 2252, 2254.

The adjudication of the sheriff is a complete sale. La. Code, arts. 2585, 2586, 2601; 9th La. R. 180; Code of Practice, arts. 690–695.

The plaintiff in execution is the warrantor of the purchaser under it. He cannot have the sale made and then repudiate it. See La. Code, art. 2599.

The bill alleges that the slaves in controversy remained in the State of Louisiana until about the 28th February, 1845, and that the defendants then unlawfully, and with the intent to defraud the complainants of their just rights in the premises, and of their

claims, liens, and privileges, &c. &c., upon said slaves, fraudulently removed, and caused to be removed, said slaves from the said State of Louisiana to the Republic of Texas. Record, p. 161, shows that said slaves had been, at the instance of the bank, previously sold to William M. Stafford. This is relied on, in part, to show that the trustee and Mrs. Stafford held adverse possession of the sales for more than two years before the filing of the bill. See Angell on Limitations, 171 and 513; 2 Story's Eq. 1520, and note.

The bill, the allegations contained in the plea, and the petition of the bank, show that the right of action on the obligation and mortgage accrued to the complainants on the 1st of March, 1842.

It is further contended that the plea of the statute of limitations of four years is a bar to the plaintiff's action. For the 22d section of this act intended that the statute should cease to run only in the case in which a resident should absent himself from Texas. The supplement to the act must have this effect, or have none at all. This has now become the settled law by the decisions of the Supreme Court of the State of Texas. See the case of Snodely *v.* Cage, and Love *v.* Dock and Tims.

Mr. Justice GRIER delivered the opinion of the court.

The Union Bank of Louisiana filed a bill in the District Court of the United States for Texas, claiming the seizure and sale of certain negro slaves which had been mortgaged to them by the defendants in Louisiana and afterwards removed to Texas. The bill was dismissed by the court below for want of proper parties, and the complainants have appealed to this court. It will be necessary to select, from the voluminous record of the case, only so much of the allegations in the pleadings and of the evidence connected therewith, as will exhibit the several points of law which have been argued and relied upon in this court.

The bill sets forth a mortgage made by the respondents through their attorney to the complainants, dated on the 6th of June, 1837, to secure the payment of a loan of $45,000, payable in one year from its date. Among other things, this mortgage included 102 slaves, with their increase. When this mortgage became due, the defendants refused to pay, and opposed the sale of the slaves, on the ground that, at the time of its execution, Mrs. Stafford was a minor. After some time a compromise was effected between the parties by the intervention of friends. The bank accepted the notes of J. S. Stafford for about twenty thousand dollars of their debt, and Mrs. Stafford joined her husband in a mortgage on the same property for the sum of $30,000 payable, the interest annually, and the principal in annual instalments,

commencing on the first of March, 1844, and ending in 1851. This mortgage is dated on the 22d of May, 1841. It recites the original mortgage of 1837, acknowledges the loan of $45,000 by the bank to respondents " for the purpose of assisting them in their pecuniary matters and for the particular purpose of paying debts due by the wife." · It recites that the wife being now of full age, " is anxious to do away with any vice, defect, or informality which might vitiate or impair the previous mortgage," and thereby " approves, ratifies, and confirms it to the amount and extent of $30,000, so that the two instruments shall be considered as one mortgage." Isaac Thomas also intervened and became a party to this mortgage, in his own right, and as administrator of Michah P. Flint, stating that Stafford had given a mortgage to Flint in his lifetime on a part of these negroes (dated 9th June, 1836) to secure him for indorsements, and likewise a mortgage to said Thomas and Flint, dated 22d of April, 1837, for $100,000 for the same purpose ; and agreeing to release and discharge both these mortgages so far as to give priority to the mortgage to the Union Bank. " This waiver and postponement by said Thomas, however, being made without prejudice to the rights acquired by him in a portion (about 48 in number) of the above-named slaves, at a sheriff's sale of the property at the suit of the New Orleans Canal and Banking Company on the 8th day of August, 1840."

The bill further alleges, (and this allegation is fully proved by the evidence in the cause) that these slaves remained in the possession of the respondents from the date of the mortgage till February, 1845, when they were fraudulently removed by them to the State of Texas for the purpose of evading the payment of this and other debts secured upon them; and that Stafford has threatened to remove them out of that State to Mexico if such a step should be necessary to prevent them from being seized to satisfy his debts.

To prevent this, a receiver was appointed by the court, and by means of a writ of assistance, a part of the slaves have been taken into his possession with much difficulty and at great expense.

The answer of Mrs. Stafford admits the mortgages, and that the slaves have been brought to Texas, and that she holds them in her possession, subject to the order of the court. Without attempting to give an abridgment of the various matters alleged in this answer, we shall proceed to notice the several points of defence made by counsel in the argument, stating the allegations, and facts which tend to elucidate them; without regarding the order or peculiar statement of them in the answer.

I. Was this mortgage valid and effectual to pass or bind the

interest, " property, and right of the wife. whether dotal or of any other description?"

In the decision of this question, it is not necessary to take into consideration the doctrines of the civil law or of the Louisiana Code (art. 2412) concerning the power of the wife to bind herself as surety for the debts of her husband; as we are of opinion that the 25th section of the act of April 2d, 1832, incorporating the Union Bank of Louisiana, is conclusive upon this point. It is as follows:

" Sect. 25. Be it further enacted, &c., that, in all hypothecary contracts and obligations entered into by any married individual, with or in favor of said Union Bank of Louisiana, or with any of its offices of discount and deposit, according to the true intent and meaning of this act, it shall be lawful for the wife of the said individual to bind and oblige herself jointly and *in solido* with him; and in such case, the property and right of the wife, whether dotal or of any other description, shall be affected by the said contracts or obligations : Provided, That the said wife be of the age of majority at the time of entering into such obligations or contracts."

Now, it s admitted that, when the latter instrument of mortgage was executed, the wife was of full age.

That it is a hypothecary contract for the loan of money by the bank, is evident from the face of the deed. And if the recital in the mortgage, that it was given for a loan of money, be not conclusive evidence of that fact, the testimony in the case fully shows that the consideration of it was the loan of $45,000, which was set to the credit of Stafford on the books of the bank, and drawn out by his checks. The purpose to which this money was applied was a matter with which the bank had no concern, and which cannot affect the validity of its security.

This instrument was a public act, duly acknowledged, and was therefore a binding contract or obligation, to affect the " property and right of the wife, whether dotal or of any other description," and by the laws of Louisiana, operated as a judgment, with lien on the property specially described in it. See Bank of Louisiana *v.* Farrar, 1 Ann. Rep. 49.

II. It is alleged, in the answer, that this contract of mortgage has been novated and extinguished.

The facts on which this objection rests are as follows : — The instrument of mortgage contains a covenant that, " in case of failure on the part of the mortgagors to pay any or either of said instalments, or any or either of the amounts of interest, it shall be sufficient cause to foreclose the same and enforce the payment by such legal process as the  re of the case shall

or may require." The mortgagors, having failed to make any payment of the annual instalments of interest, in April, 1843, the bank obtained an order of seizure and sale of the mortgaged property. According to the usual course of proceeding in such cases, when the sheriff cannot obtain a bid for cash, to the amount of two thirds of the appraised value of the property, it is again offered for sale on a credit of one year, the purchaser giving what is called a twelve months' bond; and if the purchase-money be not paid in that time, the mortgagee may have an order of seizure and sale on this bond. On this last sale, the property is sold for cash (subject to all previous liens) to the highest bidder. In this case the mortgaged property was bid off by William M. Stafford, a brother of respondents'; he gave his twelve months' bond; the property remained, as usual, in the possession of the respondents; and no part of the purchase-money was paid at the end of the year. The bank then issued process for a final sale of the property to the highest bidder, for cash. The lands included in the mortgage were sold; but the negroes were fraudulently carried off by the defendants to Texas. The amount for which the lands sold did not satisfy the first instalment of the principal of the mortgage, due in March, 1844.

The question which arises on these facts is, whether this sale to William M. Stafford, and his twelve months' bond, is a novation or extinguishment of the original mortgage. If it was, the complainants should have filed their bill on the twelve months' bond, which operated as a judgment and mortgage on the property, and not on the original mortgage, as has been done in this case.

"A novation takes place in three ways" (Louis. Code, art. 2185.) "1st. When a debtor contracts a new debt to his creditor, which new debt is substituted to the old one, which is extinguished. 2d. When a new debtor is substituted to the old one, who is discharged by the creditor. 3d. When, by the effect of a new engagement, a new creditor is substituted to the old, with regard to whom the debtor is discharged."

Whether this twelve months' bond operates as a novation, and discharges the mortgage or judgment without actual payment or satisfaction, is a question depending so entirely on the peculiar laws of Louisiana, that we must look alone to the decisions of the tribunals of that State for its solution. The cases of Offut v. Hundsley, 9 Louis. Rep. 1; Reboul v. Behren, Id. 90; and Dunlap v. Sims, 2 Ann. Rep. 239, are directly in point on this question. In the latter case, the court says, "No principle is better settled in our law than that a sale of property under execution, on a credit of twelve months, neither satisfies the judgment nor novates the debt."

On this point of defence, therefore, we must decide, that the sale to William M. Stafford and his twelve-months' bond (which it is admitted has never been paid) did not novate or extinguish the lien or debt secured by the original mortgage to the bank. This result is consonant with the true equity and justice of the case, as it is transparently clear, from the whole transaction, that William M. Stafford's interposition in this matter was merely to gain further time for the respondents, he being wholly unable to satisfy the debt of the bank, according to the tenor of his bond. His transfer of the negroes to Mrs. Stafford, or to M'Waters as her trustee, left the case, as between these parties, in precisely the same position as it stood at first. The negroes always remained in possession of respondents, subject to the lien of the mortgage, notwithstanding this complication of sales and nominal transferees.

III. The respondent, both by her pleas and in her answer, sets up the statute of limitations of Texas as a bar to the proceeding in this case; she relies, first, on the section which limits all actions of debt, upon any contract in writing, to four years; and, secondly, "that all actions for detaining personal property, or for converting such property to one's own use, shall be commenced and sued within two years next after the cause of such action or suit, and not after;" and alleges that "she has converted the slaves to her own use, and held them adversely to the complainant, from the 9th of April, 1845, until after the commencement of this suit, that is to say, for more than two years before the filing of this bill."

However much it may be the policy of Texas (as it is alleged in the cases of Love *v.* Dock, and Snodely *v.* Cage, lately decided in the Supreme Court of that State) to give a liberal construction to their statutes of limitation in favor of debtors, for the purpose of encouraging immigration, it is abundantly apparent that these sections can have no application to a bill in equity to enforce the sale of mortgaged property, whether the slaves in question be considered either as personalty or realty.

The first of the eight instalments of the principal debt became due on the 1st of March, 1844, and the last in 1851; and the bill was filed in February, 1848, less than four years after the first instalment became due; so that, if this were an action of debt, the plea could apply only to the instalments of interest payable before 1844. And, in such an action, it would be no answer to this objection to the plea of the statute, that the creditor had a right to sell the mortgaged property on the failure or neglect of the mortgagor to pay the first instalment. In cases of concurrent jurisdiction, courts of equity are said to act in obedience to the statutes of limitation, and in other cases they act

upon the analogy of the limitations of law. A bill to foreclose a mortgage and enforce the sale of the mortgaged property has no analogy to an action of *trover, detinue*, or trespass, ·The claim of the mortgagee is a "*jus ad rem*" not a "*jus in re.*" He does not claim as owner of the property. The possession of the mortgagor is not adverse, but under the mortgagee. And, although this species of realty is movable, and may be carried away or fraudulently concealed from the pursuit of the mortgagee, such acts cannot be alleged in a court of equity as an adverse possession, which will defeat the lien of the creditor after two years, in analogy to. the limitation of actions at law for taking and carrying away or converting to one's own use the property of another. A chancellor will not permit a party to plead his own fraud to defeat the equity of the complainant. This plea must therefore be overruled.

IV. The court below decided the three points of defence which we have just considered against the respondents, but dismissed the bill of complainants for want of proper parties.

This constitutes the fourth and last ground of defence which has been urged in the argument of the case in this court.

It is contended, that William M. Stafford, James A. M'Waters, and Isaac Thomas should have been made parties to this bill, and that without such parties the court cannot proceed to a decree in favor of complainants.

It is admitted, that William M. Stafford, James A. M'Waters, and Isaac Thomas reside in the State of Louisiana, and out of the jurisdiction of the court. And it is contended that, as the complainant cannot therefore compel them to become parties, he is utterly remediless, notwithstanding the original mortgagors are· in court, and have in their possession the property subject, to the lien of his mortgage.

It is true that, if these persons had been within the jurisdiction of the court, they might properly have been made parties; but there is no decree sought against either of them, nor will a decree in favor of the complainants affect any rights which they may have.

It is unnecessary, in the consideration of this point, to bring under review the doctrines advanced on this subject in treatises on equity practice and pleadings, or cases decided in England or elsewhere. The act of Congress of 28th of February, 1839, is conclusive of this point. It enacts, "that where, in any suit at law or in equity commenced in any court in the United States, there shall be several defendants, any one or more of whom shall not be inhabitants of, or found within, the district where the suit is brought, or shall not voluntarily appear thereto, it shall be lawful for the court to entertain jurisdiction and pro-

29*

ceed to trial and adjudication of such suit between the parties who may be properly before it. But the judgment or decree rendered therein shall not conclude or prejudice other parties not regularly served with process, or not voluntarily appearing to answer; and the nonjoinder of the parties who are not so inhabitants, or found within the district, shall constitute no matter of abatement or other objection to said suit." Notwithstanding the complication of mortgages, sales, and transfers of the slaves now in question, it must be observed, that they have never been out of the possession of the respondents till seized with a strong hand by the marshal on a writ of assistance, and delivered to the receiver appointed in this case. And, as we have seen, the transfer to William M. Stafford by the sheriff, on his giving a twelve months' bond, left them still subject to the lien of the mortgagees, as the bond was never paid. The transfer from Stafford to M'Waters, for the separate use of Mrs. Stafford, one of the original mortgagors, did not affect the rights of the mortgagees; neither Stafford nor M'Waters have or claim any beneficial interest in the property. M'Waters was examined as a witness, and might have been made a party if he chose. It would be a strange perversion of justice, if the remedy on a mortgage could be defeated by transfers of this description to persons living out of the jurisdiction of the court. If this act of Congress had never been passed, a court of equity would not suffer the remedy of a mortgagee to be defeated by such a scheme.

If it were true that Isaac Thomas still retained his claim to forty-eight of the slaves included in the mortgage, it would be no reason why the complainant should not be entitled to his decree as against the respondents, leaving Thomas to prosecute his claims, if he had any, at such time and in such manner as he might elect. But the plea set up in the answer on this point must be taken with the facts connected with it, as alleged by the respondent, in connection with the testimony of Thomas himself, who was examined as a witness in the case. By these it appears that the New Orleans Canal and Banking Company had a previous mortgage for $10,000 on these forty-eight slaves, executed by Stafford and wife; that a writ of seizure and sale issued thereon, and these slaves were sold to Isaac Thomas, who left them in possession of the respondents, but never paid for them; that the slaves were then sold as the property of Thomas, and purchased by one Flint, who afterwards released his right to the Canal Bank, who sold to William M. Stafford, who transferred his right to M'Waters in trust for Mrs. Stafford. It appears also, by the record, that the Canal Bank have filed their bill, claiming their lien on these slaves, who are in the hands of the receiver appointed in this case, and who, by arrangement be-

tween the parties, holds them subject to their respective rights. The Canal Bank, though not formally made a party to this bill, is in court claiming its rights through Thomas. The court have therefore before them all the parties claiming any beneficial interest in these slaves, and before they distribute the proceeds of the mortgaged property, can compel the parties interested either to settle their respective claims amicably, or by action, or interpleader, and thus make a final decision binding on all the parties who have any claim to the property.

The decision of the District Court dismissing the bill for want of proper parties must therefore be reversed, and the record remitted to the court below, with directions to enter a decree in favor of the complainants, and have such further proceeding as to justice and equity may appertain.

### Order.

This cause came on to be heard on the transcript of the record from the District Court of the United States for the District of Texas, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said District Court in this cause be, and the same is hereby reversed with costs; and that this cause be, and the same is hereby remanded to the said District Court, with directions to that court to enter a decree in favor of the complainant, and for such further proceedings to be had therein as to law and justice may appertain.