## DICKINSON v. SPEEDWAY LAND CO.

(District Court, W. D. Tennessee, W. D.   December 18, 1923.)

No. 730.

**1. Novation ☞12—Burden of proof rests on party claiming novation.**

The burden rests on a party claiming a novation to establish such claim by clear evidence showing a discharge of the original debt and an express agreement to accept the new obligation in place of the old, or such facts and circumstances as will clearly warrant the assumption of such extinguishment and acceptance.

**2. Novation ☞1—Requisites of "novation."**

A "novation" may arise in three ways: First, when a debtor contracts a new debt to his creditor, which new debt is substituted to the old one, which is extinguished; second, when a new debtor is substituted for the old one, who is discharged by the creditor; third, when by the effect of a new engagement a new creditor is substituted for the old, with regard to whom the debtor is discharged.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Novation.]

**3. Novation ☞1, 7—Intent controls; novation not established by proof.**

The intention of the parties is the controlling element in determining the question of novation, and where the acceptance by a creditor of other securities in lieu of those held was conditional, no novation arose.

In Equity. Suit by J. M. Dickinson against the Speedway Land Company. On petition of the Memphis Investment Company to be adjudged a preferred creditor. Decision deferred for further proof.

Judge J. M. Dickinson, of Nashville, Tenn., for complainant.
L. E. Farley, of Memphis, Tenn., for defendant.

ROSS, District Judge. The Memphis Investment Company, the Speedway Land Company, and the Bank of Commerce & Trust Company are Tennessee corporations located at Memphis, Tenn. On January 10, 1912, Mrs. Annie B. Snowden sold to the Speedway Land Company certain lands in Shelby county, Tenn., for the price of $125,000, of which amount $50,000 was paid in cash and for the remainder the Speedway Land Company executed to Mrs. Snowden 15 promissory notes, of $5,000 each, 10 of which were due consecutively at 6 months' intervals, beginning with July 10, 1913, and the remaining 5 were due on or before January 10, 1917. To secure these notes a deed of trust was executed by the Speedway Land Company to the Bank of Commerce & Trust Company, as trustee, on the lands conveyed. The Speedway Land Company subdivided the lands into lots and these lots were sold to various parties. It was provided in the deed of trust that, when certain amounts per front foot should be paid on such of the lots as were sold by the land company, those lots should be released from the lien imposed thereon by the deed of trust for the payment of the Snowden notes.

On January 25, 1912, Mrs. Snowden sold the 15 notes above mentioned to the Memphis Investment Company, and thereafter the investment company surrendered certain of these notes to the land com-

pany, for which the land company transferred to it notes executed by the purchasers of various lots of the subdivision, which purchasers' notes were secured by liens respectively retained in the deeds executed by the land company to such purchasers. By this arrangement, when a sufficient number of the purchasers' notes would be transferred to the investment company to liquidate one of the Snowden notes, such note would be marked paid and surrendered to the investment company, but where the amount of the purchasers' notes was not sufficient to liquidate the Snowden notes such amount would be then entered as a credit on the Snowden notes. On June 28, 1917, an order was entered in this court appointing the Bank of Commerce & Trust Company as receiver for the Speedway Land Company, and as such receiver it took over its assets and the management of its business.

The Memphis Investment Company has filed herein a petition, whereby it seeks to have itself adjudged a preferred creditor of the Speedway Land Company and to have paid to it out of the funds in the hands of the receiver the sum of $4,271.15, alleged to be due it for certain of said purchasers' notes which it accepted as alleged in the petition in the manner hereinabove set out, but which it is charged have not been paid. Three specific instances are alleged in the petition:

(1) That on December 19, 1912, it purchased certain notes, known as the Jenkins notes, to the amount of $12,969.50, and for which amount the Snowden notes were credited; that all the Jenkins notes were paid, except one for the sum of $1,198, which was executed for the deferred payment on lot No. 2 of section F of said subdivision; that this note was due January 15, 1918, and bears interest from October 24, 1912, at 6 per cent.

(2) That on June 14, 1913, the investment company had transferred to it notes of W. R. Tiffany, the purchaser of lot 50, section C, in said subdivision, amounting to $5,404.80, which amount was credited on the Snowden notes, and all of which sum has been paid, except 8 notes, of $15 each, which matured monthly, respectively, from January 15, 1916, and all of which bore interest from January 15, 1912.

(3) That on July 8, 1914, it received the notes of J. Maudie Huffman in the sum of $5,562.66, which amount was credited on the Snowden notes, and that of this series the investment company still holds 37 notes, of $20 each, which were due monthly, respectively, from January 15, 1916, and all of which bore interest from January 15, 1914; these notes having been executed for the deferred payments on lots 29 and 30 in section F of said subdivision.

It is further alleged that the purchasers, Jenkins, Tiffany, and Huffman, are insolvent; that prior to the appointment of the receiver for the land company such notes as petitioners held by virtue of any such transactions as those detailed above were promptly paid by the Land Company to the Investment Company where default was made by any purchaser, but that since the appointment of the receiver, such receiver has declined to pay any of the notes set out in the petition or any notes held by petitioner; that on the 21st day of August, 1917, the Bank of Commerce & Trust Company, as trustee, sold the land up-

on which a lien was retained to secure the payment of the Jenkins notes for the purpose of satisfying the claims of holders of the indebtedness; that it realized the sum of $1,548.40, but that no notice of such sale was given petitioner; that the lien as to the Tiffany property had not been foreclosed, but that the lot is not of sufficient value to pay petitioner's debt; that as to the Huffman notes the investment company was informed when it purchased these notes that they were secured by a deed of trust and that Huffman was solvent; that in fact the representations were false, that no deed of trust was executed on the property, that Huffman was insolvent, that the property is inadequate to pay the indebtedness, and that in this manner the land company perpetrated a fraud upon petitioner; and petitioner charges that it held a prior lien to that of the Speedway Land Company on said property, that at the instance and for the benefit of the land company it released this lien, that the lands so released have gone into the hands of innocent purchasers, and that the lien held by petitioner should follow, and attach to the proceeds of the sale of the lots mentioned.

The answer of the receiver, Bank of Commerce & Trust Company, puts in issue the material allegations of the petition whereby relief is sought, and specifically denies that the notes referred to as purchasers' notes were accepted for collection by petitioner, as alleged in the petition, that there was any agreement they were to be transferred to petitioner with any understanding that such act was an accommodation to the Speedway Land Company, and denies that any primary liability of the land company on said notes was in any way affected. It is averred in the answer that all such purchasers' notes were accepted by petitioner in full satisfaction of the Snowden notes, surrendered as above set out, and that such acceptance was in no way conditional, but a full satisfaction of such Snowden notes as were thus surrendered. All allegations of fraud are specifically denied.

It is contended by attorneys for petitioner that the character of dealing between the Memphis Investment Company and the Speedway Land Company was such as that the notes called purchasers' notes, which would be accepted in lieu of the Snowden notes, constituted nothing more than the "substitution of securities"; that no new obligation was created, no rights held by virtue of the purchase of the Snowden notes by the Investment Company released, and that the primary obligation of the Speedway Land Company to the Investment Company was unchanged.

The contention of the attorneys for receiver is that, when the investment company accepted the purchasers' notes and released the Snowden notes, the relations of the parties became entirely changed, in that the land company was obligated thereafter to the investment company in no other capacity than as indorser on the purchasers' notes; that the investment company accepted the purchasers' notes secured by the lien on the properties for which they were respectively given; that by the terms of the deed of trust securing the Snowden notes the investment company knew that the lien originally given to secure the Snowden notes was to be released when certain amounts had been

paid by the purchasers for lots respectively purchased by them; and that, having accepted these notes with that knowledge, it worked a novation as between the parties, and that petitioner now stands simply as a general creditor of the estate of the Speedway Land Company.

The proof in the case consists of three depositions taken by the petitioner, they being the depositions of R. Brinkley Snowden, vice president of the Memphis Investment Company, vice president of the Bank of Commerce & Trust Company, and a son of the said Mrs. Annie B. Snowden; F. W. Faxon, who is general manager of the Speedway Land Company; and the deposition of E. C. Cochran, secretary of the Memphis Investment Company.

[1] The burden rests upon a party claiming a novation to establish such claim. Sharp v. Fly, 9 Baxt. (Tenn.) 4; Henry v. Nubert (Tenn. Ch. 1895) 35 S. W. 444; Netterstrom v. Gallistel, 110 Ill. App. 352; Cutting v. Whittemore, 72 N. H. 107, 54 Atl. 1098; State Bank v. Domestic Sewing Machine Co., 99 Va. 411, 39 S. E. 141, 86 Am. St. Rep. 891; Fidelity Loan Co. v. Engleby, 99 Va. 168, 37 S. E. 957.

Novation is never presumed, and it must be clearly established by evidence showing a discharge of the original debt and an express agreement to accept the new obligation in the place of the old, or such facts and circumstances must be established by the proof as will clearly warrant the assumption of such extinguishment on the one hand and acceptance on the other. Sharp v. Fly, above; Henry v. Nubert, above; Union Bank v. Stafford, 12 How. 327–339, 13 L. Ed. 1008; Hyde v. Booraen, 16 Pet. 169–180, 10 L. Ed. 925.

[2] A novation may arise in three ways:

"(1) When a debtor contracts a new debt to his creditor, which new debt is substituted to the old one, which is extinguished. (2) When a new debtor is substituted to the old one, who is discharged by the creditor. (3) When by the effect of a new engagement a new creditor is substituted to the old, with regard to 'whom the debtor is discharged." Union Bank v. Stafford, supra.

[3] It is manifest, if a novation arose in the instant case, it is under the second head above mentioned, and the evidence concerning the same must be gathered from petitioner's proof, as defendant has contented itself therewith. Therefore, unless the weight of the evidence is in favor of the contention of the defendant, claiming as it does a novation, this claim must fail. The petitioner asserts that an agreement existed, by the terms of which it was expressly understood that the investment company was accepting the notes of the purchasers of lots of the Speedway subdivision as an accommodation to the land company, and with the express understanding that the investment company lost none of its rights as the holder of the Snowden notes, and that the land company was relieved of none of its primary liability as the payor of such notes. The proof fails to show any such express agreement. Mr. Snowden states:

"There was no formal agreement, other than that set out in the trust deed, but the notes were very often paid by a substitution of other notes; that is, when a $5,000 note would come due, and the Speedway Land Company did

not have the money to pay it with, the investment company would take other notes in lieu of cash for the payment of parts of those notes, and maybe of a whole note sometimes."

Mr. Faxon states:

"The agreement was that we would deliver these purchase-money notes that the Speedway Land Company received to the Memphis Investment Company, and they would surrender the $5,000 notes, and that in the event any of these notes turned over to them by the Speedway Land Company were not paid regularly, the Speedway Land Company would substitute other notes that were being paid regularly, and take back the notes that were not being paid, and this was done from time to time."

This is the strongest proof offered on the question of any agreement. The proof further discloses that there was somewhat of a common interest among the parties interested in these companies and in the Bank of Commerce & Trust Company, and that, as above shown, one of the principal parties in the Memphis Investment Company and the Bank of Commerce & Trust Company was the son of the original vendor, Mrs. Snowden, and the dealings between the parties might be said in brief to be that, in view of the intimacy existing between the interested parties, their relations one with another, that the same formality was not exacted as would have been in dealings between those differently situated, and that when any of the Snowden notes were surrendered by the Memphis Investment Company, and notes of the purchasers of property in the subdivision accepted in lieu thereof, it was with the understanding that the land company would pay any such notes as should not be paid by the purchasers, or substitute notes in lieu of such purchasers' notes which would be paid, and that it was clearly the understanding of the parties that the Memphis Investment Company would not be forced to its remedy of foreclosing such purchasers' notes as it thus held in order to secure its money.

The proof does disclose that it was a conditional agreement whereby the Snowden notes were surrendered. This being true, no novation arose. Hyde v. Booraen, above; Edgell v. Tucker, 40 Mo. 523. The intention of the parties is the controlling element in determining the question. Morecraft v. Allen, 78 N. J. Law, 729, 75 Atl. 920, L. R. A. 1915B, 1; Griggs v. Day, 136 N. Y. 152, 32 N. E. 612, 18 L. R. A. 120, 32 Am. St. Rep. 704; Terry v. Robbins, 128 N. C. 140, 38 S. E. 470, 83 Am. St. Rep. 663; Fidelity Ins. Co. v. Shenandoah Valley R. R. Co., 86 Va. 1, 9 S. E. 759, 19 Am. St. Rep. 858; Studebaker Bros. Mfg. Co. v. Endom, 51 La. Ann. 1263, 26 South. 90, 72 Am. St. Rep. 489; Workingman's Bldg., etc., v. Williams (Tenn. Ch.) 37 S. W. 1019; Henry v. Nubert, above; Sharp v. Fly, above. A multiplicity of authorities might be cited, supporting the questions of law mentioned above.

It is true the deed of trust, made an exhibit to the petition, provides that, when a lot should be sold by the Speedway Land Company embracing certain frontage, and certain amounts had been paid thereon, the trustee was authorized to release those lots from the deed of trust—that is, from the burden of the lien created as security for the Snowden notes—and it must be presumed that all of the parties understood the provisions of this deed of trust. However, that did not

necessarily release the land company from its primary obligation on the notes to the extent that it could be said in a court of equity that, by the acceptance of the purchaser's notes under the conditions attending their acceptance, it worked an extinguishment of the obligation of the land company and relegated the investment company to its sole rights as holder of said purchasers' notes. This contention, therefore, must be determined against the defendant.

However, there are certain strong equitable considerations entering into the case, which are deemed sufficient to warrant the opinion that the rights claimed by the petitioner should not now be determined in petitioner's favor as contended in its behalf, but that, in view of the question of the laches raised by the defense, and in view of the meagerness of the proof, and the entire lack of any evidence as to whom the relative rights of the petitioner and the other creditors of the land company attached, or whether the rights of the third parties have so intervened as that it would be inequitable to allow petitioner to stand as a preferred creditor, or as to whether it should be held as a general creditor, with only such rights as might accrue to it by virtue of the obligation of the land company to pay such notes as might not be paid by the purchaser, or, in other words, its obligation as an indorser or as a promisor, should be determined upon more evidence than is now offered, and without determining ultimately the rights of the parties, I am of opinion this case should be remanded to the rules for proof on the question suggested, and all other questions presented and not herein determined or reserved for further consideration.