## SHAINWALD v. DAVIDS et al.

### (District Court, N. D. California.  August 26, 1895.)

### No. 262.

**1. BANKRUPTCY—RIGHT OF ASSIGNEE TO SUE—REV. ST. §§ 5046, 5047.**

In 1880 S., as assignee in bankruptcy of the firm of S., C. & Co., and its individual members, brought suit against one L. to have a judgment and execution obtained by L. against S., C. & Co. set aside as fraudulent, and to have L. declared a trustee of certain property of the firm, bought by him at sheriff's sale, for the benefit of S., as assignee.  In this suit a decree was entered granting the relief sought, and requiring L. to pay over to S., as assignee, a large amount of money.  In a creditor's suit subsequently brought by S. against L. upon this decree, one R. was appointed receiver of all L.'s property, and L. executed to him an assignment thereof, but never delivered to him any of his property, but concealed the same. In 1895 S. brought a suit in California against L., together with D. and I., sundry insurance companies, and the P. Bank of Washington, alleging that L. had been conducting business, in the latter state, in the names of D. and I., with funds derived from the assets of S., C. & Co., fraudulently acquired by him; that all such business, its assets and profits, were in fact the property of L., except as against S. or R.; that the assets of such business had been insured by L. in the insurance companies which were made parties to the suit, and such companies, in consequence of the partial destruction of such assets by fire, had become liable to pay certain sums upon their policies, and were about to pay the same to L., or to D. and I., but that the same were rightfully the property of S., as assignee, or of R., as receiver, and that L., in the name of D. and I., was still carrying on business with funds which were rightfully the property of S. or of R.  It was also alleged that L. had pretended to assign the moneys payable under the insurance policies to the P. Bank, as security for an indebtedness which had been fully paid, with the intent to defraud S. and R., said bank having full knowledge of the facts; that, unless restrained by injunction, L., D., and I. would proceed again to secrete the property; that R. was, and long had been, out of the jurisdiction of the court, and therefore could not be made a party; and that the facts relating to the existence of the property in the hands of L. had only come to the knowledge of S. within three months before the commencement of the suit.  The bill thereupon prayed for discovery from the defendants as to the property; for an injunction restraining the disposition thereof by L., D., or I.; that all such property be adjudged to belong to S., as assignee, or to R., as receiver; that the insurance companies be required to pay over the funds in their hands to S.; and that the assignment to the P. Bank be declared void.  *Held* that, notwithstanding the appointment of R. as receiver in the creditors' suit, and the assignment of the legal title of L.'s property to him, S., as assignee in bankruptcy, had a right to bring the present suit, for the protection and collection of the assets of the estate, by virtue of his equitable interest in such assets, and under Rev. St. §§ 5046, 5047.

**2. SAME — JURISDICTION OF DISTRICT COURT—SAVING CLAUSE OF ACT OF JUNE 7, 1878.**

*Held*, further, that the United States district court, as a court of bankruptcy, had jurisdiction to entertain the suit, such suit being saved by the act of June 7, 1878 (20 Stat. 99), repealing the bankrupt law.

**3. EQUITY—JURISDICTION.**

*Held*, further, that the complainant had not an adequate remedy at law, since the bill sought discovery, and also sought to impress a trust upon the property in the defendants' hands.

**4. SAME—LACHES—REV. ST. § 5057.**

*Held*, further, that the suit was not barred by the provision in Rev. St. § 5057, requiring suits between assignees in bankruptcy and persons

claiming adverse interests in the estate to be brought within two years from the accruing of the cause of action, since it was alleged in the bill that the cause of action had been fraudulently concealed, and not discovered until within three months before the commencement of the suit.

5. SAME—PARTIES—ASSIGNEE UNDER COLORABLE ASSIGNMENT.
    *Held,* further, that the fact that the P. Bank could not be made amenable to the process of the court, and had not voluntarily appeared, would not prevent the court from enjoining the disposition of the funds in question, and examining into the merits of the case, since it was alleged in the bill that the assignment of the insurance moneys to it was merely colorable, and made, with knowledge on its part of the facts, for the purpose of defrauding S., as assignee.

6. SAME—SAME—ATTACHING CREDITOR.
    *Held,* further, that an alleged creditor of L., who had attempted to attach the insurance moneys by the service of a notice of garnishment in Washington, was not a necessary party to the suit, it being alleged in the bill that such moneys were in California, and payable there.

Bill in equity to have certain personal property of Harris Lewis declared and adjudged to be trust funds in the hands of said Lewis, as trustee for the benefit of the complainant, as assignee of the bankrupt firm of Schoenfeld, Cohen & Co., and of the creditors thereof; such trust funds to be applied in payment and satisfaction of the decree of this court, rendered on November 5, 1880, in the case of Shainwald v. Lewis, No. 221 in equity (6 Fed. 753), as the same was revived and continued in force by the decree of June 14, 1890, in case No. 241 in equity (46 Fed. 839). Order to show cause sustained.

James L. Crittenden, for complainant.

Wal. J. Tuska (M. T. Moses and S. M. Van Wyck, Jr., of counsel), for D. S. Davids and Harris Lewis.

MORROW, District Judge. The bill in equity was filed January 15, 1895. A temporary restraining order and an order to show cause why an injunction should not issue as prayed for in the bill were made on January 19, 1895. An amended bill was filed April 22, 1895, in which the Puget Sound National Bank of Seattle, state of Washington, was made a party. It is sought, in and by this bill, to prevent Harris Lewis, I. J. Lewis, and D. S. Davids, or the Puget Sound National Bank, purporting to be the assignee of these parties, from receiving, and the insurance companies from paying to the above-named parties, certain moneys due on several policies of insurance upon goods and merchandise belonging to the firm of Davids & Co., composed of Harris Lewis, I. J. Lewis, and D. S. Davids, said firm owning a store in Seattle, state of Washington, and carrying on business under the name and style of "The Famous. Davids & Co., Proprietors," and which goods and merchandise had been damaged by fire; and it is further sought to have such sums of money as are due upon said policies of insurance declared and adjudged to be trust property in the hands of Harris Lewis, I. J. Lewis, and D. S. Davids for the benefit of Herman Shainwald, as assignee of the bankrupt firm of Schoenfeld, Cohen & Co., and of the creditors of said firm, such property being claimed to be the proceeds and profits of the assets of said firm held by Harris Lewis,

and fraudulently acquired by him, as adjudged by the former decrees of this court; and, further, that such trust property be applied in liquidation of the judgment and decree of this court in favor of the complainant herein, and against Harris Lewis, in case No. 221 in equity (6 Fed. 753), as the same has been revived by the decree of the court in case No. 241 in equity (46 Fed. 839), said judgment now amounting to the sum of $68,829.25. The chief ends sought to be attained, therefore, are (1) to have the moneys due upon these policies of insurance declared trust property, and (2) to prevent the insurance companies from paying such moneys to Harris Lewis, I. J. Lewis, and D. S. Davids, or to the Puget Sound National Bank, but, on the contrary, to direct them to pay said sums to the complainant herein.

To fully and clearly understand the purposes and scope of this action, it will be necessary to refer somewhat fully to the allegations of the bill. It is averred: That on the 25th of June, 1877, and for a long time prior thereto, Louis S. Schoenfeld, Isaac Newman, and Simon Cohen were copartners doing and carrying on business in the city and county of San Francisco, state of California, under the firm name of Schoenfeld, Cohen & Co., each having an equal one-third interest therein, as dealers in toys, notions, and other goods, wares, and merchandise. That on the said 25th of June, 1877, the property of the firm consisted of goods, wares, and merchandise in said city and county of the value of about $40,000, outstanding accounts due said firm of about $18,000, and bills of lading for goods on the way, consigned to said firm, of about $10,000. That on said 25th of June, 1877, the debts of the firm amounted to $50,042.12, of which sum $2,000 was due the defendant Harris Lewis, on a certain promissory note executed by the firm to him, and no other or greater sum whatsoever. That on or about said 25th of June, 1877, said Harris Lewis, Isaac Newman, and Louis S. Schoenfeld, with the intent, object, and design to defraud the said Cohen and the creditors of said firm, conspired, combined, and confederated together to make and issue certain promissory notes of and in the name of the firm, without receiving or requiring any consideration therefor, and to have said Lewis bring a suit against said firm, based in large part upon the apparent, but false and fictitious, indebtedness thereby created, and, in such suit, to cause to be levied an attachment upon all the property of said firm, and to have said Lewis obtain a judgment in said suit, and to have all the property of said firm sold at sheriff's sale under an execution issued upon such judgment. That in pursuance of said fraudulent conspiracy, and in the execution thereof, the said Schoenfeld and Newman did make, execute, and deliver to said Lewis the said false, fictitious, and fraudulent notes of said firm, and said Lewis did bring and commence a suit thereon in the district court of the Nineteenth judicial district of the state of California, for said city and county, and did therein cause all of said property of said firm to be attached, and did obtain a judgment in said suit against said firm, upon said fictitious indebtedness, for the sum of $31,000, interest and costs, and did cause an execution to be issued upon such

v.69 F. no.8—44

judgment, and levied upon all the property of said firm, and did cause all of said property to be sold by the sheriff, and the said Lewis did bid in the same for $20,050, or thereabouts. That said Lewis did thereafter sell and dispose of said property of said firm so obtained possession of by him, and did convert the same into money, and did realize and receive therefrom the sum of $64,000, or thereabouts. That thereafter such proceedings were had in the district court of the United States for the district of California that the firm of Schoenfeld, Cohen & Co. and Louis S. Schoenfeld, Isaac Newman, and Simon Cohen, the individual members thereof, were on December 6, 1878, duly adjudicated bankrupts. That thereafter Herman Shainwald was appointed the assignee in bankruptcy of the firm, and of the individual members thereof, and said Shainwald on April 9, 1878, qualified and entered upon the discharge of his duties as such assignee, and ever since has remained and still is such assignee. That on the 3d day of October, 1879, Herman Shainwald, as such assignee, commenced a suit in equity in the district court of the United States for the district of California, against Harris Lewis, founded and based upon the aforementioned fraudulent acts, things, and transactions, which suit is numbered 221 in equity in said court. That, in this suit, the assignee sought to set aside said judgment and execution sale, and to recover from said Lewis the proceeds of the said property of said firm, and interest thereon, and to have Harris Lewis adjudged to be the trustee of all thereof for the benefit of Herman Shainwald, as such assignee. That a subpœna was duly served upon Harris Lewis, and he thereafter appeared and made answer, and a trial was thereafter duly had. That a judgment and decree was made and entered on November 5, 1880, in favor of Herman Shainwald, as assignee aforesaid, and against Harris Lewis, for the sum of $98,524.33, and for costs (which were thereafter taxed at the sum of $908.62), and for interest on the amount of said judgment and costs at the rate of 7 per cent. per annum. A copy of this judgment is annexed to and made part of this bill. That said judgment has been and is revived, and at all times kept alive and in force, and there now remains due and unpaid on account thereof the sum of $69,829.25, with interest, etc., from June 14, 1890, at the rate of 7 per cent. per annum. That on or about November 16, 1880, an execution was issued out of said court on said judgment and decree of November 5, 1880, which execution was thereafter, on November 16, 1880, returned wholly unsatisfied. That thereafter, and on or about November 16, 1880, Herman Shainwald, as assignee as aforesaid, did present to and file in said court his creditor's bill against Harris Lewis, based and founded on the decree in suit No. 221, which said creditor's suit is numbered 231 in said court. That an injunction was issued and served on Harris Lewis on November 16, 1880. A copy of this injunction is annexed to and made part of the present bill. That on or about November 16, 1880, in suit No. 231, an order was duly made and entered appointing Ralph L. Shainwald receiver of all the property, estate, and effects of Harris Lewis. A copy of this order is also annexed to and made part of this bill. That said

Ralph L. Shainwald thereupon qualified and entered on the discharge of his duties as such receiver, and he ever since has been, and still is, such receiver. That such proceedings were thereafter taken and had, in said suit numbered 231, that Harris Lewis did, on or about December 20, 1880, make, execute, and deliver to Ralph L. Shainwald an assignment in writing of all his real and personal property. A copy of this assignment is also annexed to the bill. That an amended final decree in said suit 231 was made and entered in favor of Herman Shainwald, as such assignee, and against Harris Lewis.

The present bill, after reciting the issuance of a temporary restraining order, and an order to show cause, in case No. 221, and the issuance of an injunction in case No. 231, contains averments substantially as follows: That Harris Lewis has at all times refused, neglected, and failed, and still does refuse, neglect, and fail, to pay or discharge or satisfy the decree of November 5, 1880, in said suit numbered 221, as originally rendered and subsequently revived, either in whole or in part; and has at all times failed, neglected, and refused, and still does fail, neglect, and refuse, to surrender or deliver up to said assignee, or to said receiver, either in whole or in part, or at all, the aforesaid property and assets of said firm of Schoenfeld, Cohen & Co., or the proceeds thereof, or any of the interests thereon, or profits thereof; and has at all times retained, and still does retain, the same, and all thereof. That, at divers times, property and sums of money have been received by said assignee and said receiver from persons other than Harris Lewis, which have been applied on account of said judgment and decree in suit No. 221, and which have reduced said judgment and decree to the balance of $69,829.25, still remaining due and unpaid. That neither the receiver nor the assignee has ever received from said Harris Lewis any of the property or proceeds of property included by said judgment and decree of November 5, 1880, in suit No. 221, and neither said receiver nor said assignee ever learned or discovered, nor had any notice or knowledge of, the identity, location, character, whereabouts, or situation of any other of the property of which said Ralph L. Shainwald was so appointed receiver, nor of any property which could be subjected to the payment of said decree in suit No. 221, until within less than three months prior to the commencement of this action. That said Harris Lewis at all times secreted and concealed from both said receiver and said assignee the identity, location, character, whereabouts, and situation of all such property, and kept the same in the names of other persons than Harris Lewis, and thereby prevented both said receiver and assignee from discovering the same; and said receiver and said assignee have even now only discovered a small part and portion of said property, to wit, that in the bill described, and certain other property, all of which, taken together, is insufficient in amount and value to satisfy and pay the decree in said suit No. 221. That said Harris Lewis has secreted his money, property, and effects with the purpose of defrauding said assignee and said receiver, and of preventing the same being seized or levied upon or applied towards

the satisfaction of said decree in suit No. 221, and has, at all times, since the rendition of said judgment, been the owner and possessed of property and effects of the value of many thousands of dollars, which were and are justly and legally applicable towards the satisfaction of said judgment and decree, and still has the same standing in the name of persons other than himself. The bill then proceeds to aver the disposition and use made by Harris Lewis of some of the assets of the bankrupt firm of Schoenfeld, Cohen & Co. decreed to be held by him in trust for the benefit of said firm and of its creditors, and indicates what property it is the object of the bill to reach. The averments in this regard are as follows: That on or about October 1, 1894, a certain business was being conducted and carried on in Seattle, state of Washington, under the name and style of "The Famous. Davids & Co., Proprietors," which said business was that of dealing in clothing and other merchandise, and was ostensibly managed and carried on by one D. S. Davids and one I. J. Lewis, nephews of Harris Lewis, as partners. That, on said last-named day, the goods, wares, and merchandise constituting the stock in trade of and the furniture and fixtures of "The Famous. Davids & Co., Proprietors," was of the value of $70,000. That the said Harris Lewis was at all times the real and sole owner of said business, and of said stock in trade, and of said goods, wares, and merchandise constituting the same, and of said furniture and fixtures, and was carrying on said business in the name and style of "Davids & Co.," and of "The Famous, Davids & Co., Proprietors," for the purpose and with the intent of concealing the real ownership in him of the same, and to prevent the same being seized and applied towards the satisfaction of the decree in suit No. 221; and all of the money and property which was invested in said business and in said goods, etc., was and were the proceeds of the aforementioned property of the firm of Schoenfeld, Cohen & Co., bid in and obtained by Harris Lewis as aforesaid, and the profits thereof were the proceeds and resulting profits of property held and controlled by Harris Lewis at the time of the appointment of said receiver, and which he was directed, in and by said order, to deliver to said receiver; and all of said goods, etc., therefore, justly and legally belonged and belong to Herman Shainwald, as assignee, and to Ralph L. Shainwald, as receiver. That at no time did said D. S. Davids nor I. J. Lewis have any interest whatever in said business and store, but that Harris Lewis was the real and beneficial owner. Then follow several allegations, each of a similar purport, averring the corporate existence of the insurance companies sought to be enjoined from paying the insurance moneys to Harris Lewis, or to any other person except the complainant, and also setting forth the further fact that such companies transacted business in the states of Washington and California, and had an authorized agent in the city and county of San Francisco, state and Northern district of California; that Harris Lewis, through and in the name of Davids & Co., insured in said companies, through their agents as aforesaid, the goods, wares, merchandise, stock in trade, and other property of the said store and business conducted, as aforesaid, under the name of "The Famous,

Davids & Co., Proprietors," against loss by fire. The amounts insured with the several companies are set forth, and the specific allegation is made that the agents with whom the contracts of insurance were entered into did at all times, and now do, reside in the Northern district of California; that such agents have full charge, custody, and control of all the property and funds of said several corporations, respectively, and particularly their funds for the payment of losses under their said several policies; that said agents have kept, do keep, and now have in said Northern district of California, and not elsewhere, under their respective control, all the moneys and funds for the payment of losses under their policies of fire insurance in said states and territories referred to, and particularly the moneys and funds for the payment of the losses hereinafter alleged; and all such moneys and funds at all times were, and ever since have been, and now are disbursed and paid out only by and under the direction of said respective agents, managers, and resident secretary, and no other agents of said corporation, or any of them, have any control or management of said money or funds, or any thereof, or any authority to pay or settle for any losses or other demands whatever against any of said corporations, except by special instruction of said respective agents, managers, and resident secretary.

It is further averred: That Harris Lewis duly paid the premiums on said policies, and that said policies were delivered to Harris Lewis, and were in force on October 1, 1894, and at the time of the fire hereinafter mentioned. That on the 1st day of October, 1894, while said goods, etc., were so insured as aforesaid, they were in part consumed and damaged by fire, while in the store and building in said Seattle. That the losses, etc., have been ascertained and apportioned among the several insurance companies on the several policies as follows: From the Royal Exchange Assurance Company, $7,270.41; from the Home Insurance Company, $7,270.41; from the Liverpool & London & Globe Insurance Company, $2,423.47; from the Fire Association of Philadelphia, $1,938.78; from the American Fire Insurance Company, $1,454.08; from the Westchester Fire Insurance Company of New York, $1,454.08; from the Orient Insurance Company, $969.39; from the National Fire Insurance Company, $969.39; from the Western Assurance Company, $1,000; from the Scottish Union & National Insurance Company, $2,000,—making in all the sum of $26,750. That all the insurance was effected and the losses adjusted under the name of "Davids & Co." That said losses and the money due from said several insurance companies, under said policies, by reason of said fire, really and in equity belong and are due to Herman Shainwald, as assignee aforesaid, and to Ralph L. Shainwald, as receiver aforesaid, and should be paid to them, to apply upon said judgment in case No. 221. That these several insurance companies threaten and are about to pay over to Harris Lewis, or to said Davids & Co., or to their agents, etc., the several amounts due under the policies aforesaid, and will do so unless restrained and enjoined by this court. That if said moneys should be paid over to

Harris Lewis, or to said Davids & Co., or to their agents, etc., it would be immediately secreted and hidden, with intent to deprive Herman Shainwald, as assignee, and Ralph L. Shainwald, as receiver, of the same; and the said Herman Shainwald and Ralph L. Shainwald, as assignee and receiver, respectively, will be greatly and irreparably injured and damaged thereby. That only a portion of the goods, etc., were damaged by fire, and that, very shortly after said fire, the said Harris Lewis, acting in the name of said Davids & Co., resumed the carrying on of said business, and has ever since carried on, and still carries on, the same, in the name of "Davids & Co.," or "D. Davids & Co.," or "The Famous," or "The Famous Clothing Company," or in other names, to the undersigned unknown, and has a large stock of goods therein, to wit, of the value of about $40,000. That D. S. Davids and I. J. Lewis claim an interest therein as being owners thereof; but that they are merely employés, for a salary, of said Harris Lewis. That, unless restrained and enjoined by this court, said Harris Lewis and D. S. Davids and I. J. Lewis will immediately, upon their ascertaining that the facts as herein alleged are known either to Herman Shainwald or to Ralph L. Shainwald, or to their attorney, endeavor, by assignment, etc., to dispose of and put out of their hands all of said business and stock in trade and other property thereof, with the intent to defraud Herman Shainwald and Ralph L. Shainwald, and to prevent the same from being applied towards the satisfaction of said decree in suit No. 221, as originally entered or subsequently revived. That I. J. Lewis and D. S. Davids are both wholly irresponsible financially, and, unless they are restrained and enjoined as before prayed for, Herman Shainwald, as assignee, and Ralph L. Shainwald, as receiver, will suffer great and irreparable injury and damage. That said Herman Shainwald, as such assignee, is informed that Harris Lewis has pretended to assign the said moneys payable for said losses and the insurance policies to the Puget Sound National Bank, a national banking corporation, doing business in the state of Washington. That such assignment, if made, was solely by way of security for indebtedness of said Harris Lewis, doing business under said name of "Davids & Co.," to the said bank, which said indebtedness did not exceed the sum of $6,000. That said indebtedness has been fully paid, and that no sum whatever remains due to the said Puget Sound National Bank upon said indebtedness for which the said moneys due were pretended to be assigned as security, and said Harris Lewis still remains, except as against Herman Shainwald, as assignee, and Ralph L. Shainwald, as receiver, the owner of, and entitled to, all moneys due and payable under said policies, and said Puget Sound National Bank has no interest therein, and never had any interest therein, or right thereto, save the right to hold or receive the same as security for said indebtedness, if the same was in fact assigned to the said bank. That said assignment, if made, was made by Harris Lewis with the intent, etc., to defraud and delay Herman Shainwald and Ralph L. Shainwald, and of placing amounts due under said insurance policies outside of and beyond the jurisdiction of the court, and to at-

tempt to defeat and defraud the jurisdiction of this court. That said Puget Sound National Bank took said assignment with full knowledge and notice of all the rights of Herman Shainwald, as such assignee, and Ralph L. Shainwald, as receiver, and to defraud and delay the latter, and to attempt to defraud, defeat, and oust the jurisdiction of this court.

The allegations of the bill conclude with the averment that Ralph L. Shainwald, the receiver, is now, and for several years last past has been, away from and outside, and a nonresident of, said Northern district of California, and has been during said time, and is, in and a resident of the state of New York, and outside the jurisdiction of this court, and for that reason is not made a party to this suit; and complainant prays that process issue to make said Ralph L. Shainwald, as receiver, as aforesaid, a party hereto, if he should come within the jurisdiction of this court.

The prayers of the bill are (1) that each and every of the respondents, other than Harris Lewis, be required to make discovery of money, estate, effects, credits, and other property of the said Harris Lewis, or in which he may have an interest, they, and each of them, may have in their possession, or under their control, or in the possession or control of either of them; (2) that they, and each of them, and their agents, attorneys, and employés, be enjoined and restrained from surrendering, delivering, parting with, or otherwise incumbering or disposing of to said Harris Lewis, or to any person or persons other than said Herman Shainwald, as assignee, as aforesaid, and said Ralph L. Shainwald, as receiver, as aforesaid, any money, estate, effects, credits, and other property of the said Harris Lewis, or any interest which he may have in the same; (3) that they be adjudged and decreed to surrender, pay over, and deliver the same to the complainant, as assignee, or to the said Ralph L. Shainwald, as receiver, and that the same be applied on account of the said decree in said suit numbered 221, and upon the decrees reviving, or to revive, the same; (4) that all the assets, stock, effects, and property of or invested in the store called "The Famous," or "Davids & Co.," and all moneys due on account thereof, by reason of said insurance or otherwise, and all other moneys and proceeds above referred to, be declared and adjudged to be the proceeds and results of the property of Schoenfeld, Cohen & Co., fraudulently obtained by Harris Lewis, and that the same be transferred or delivered up to the complainant, or to Ralph L. Shainwald, as receiver, and that said Davids & Co. be adjudged and decreed to consist and be composed solely of the said Harris Lewis, and that the said D. S. Davids and I. J. Lewis be adjudged to be trustees of all the property of the so-called firm of "Davids & Co.," etc.; (5) that each of said insurance companies be required to pay over to the complainant, or to Ralph L. Shainwald, as receiver, all moneys due or payable for insurance on the goods and property aforesaid; (6) that all assignments and transfers of property and moneys of said Davids & Co., or of the business of "The Famous," and of said insurance companies, to John Doe or Richard Roe, or to any other person, be declared to be null and void, and

fraudulent, and made with intent to defraud the complainant and the said Ralph L. Shainwald, as receiver. An order to show cause why an injunction should not issue is prayed for; also a temporary restraining order prohibiting said insurance companies from paying, and the said Harris Lewis, D. S. Davids, I. J. Lewis, Davids & Co., or any other person or persons, from receiving, the sums of money due upon said policies of insurance, or that any of the respondents, or their agents, etc., collect, receive, assign, transfer, incumber or otherwise interfere with or dispose of, or assert any right or title or interest in or to, any of the money, goods, wares, merchandise, credits, estate or effects, choses in action, or claims or demands, or other property whatsoever, or interest therein, of the store and business now or heretofore carried on and conducted in Seattle, state of Washington, under the name of "The Famous," or "The Famous, Davids & Co., Proprietors," or under any other name, etc.

As was previously stated, on January 19, 1895, a temporary restraining order, and an order to show cause why an injunction should not issue as prayed for, were granted upon the original bill. The question now presented to the court for determination occurs upon the return to the order to show cause, and is whether or not the order should be continued. Harris Lewis and D. S. Davids (I. J. Lewis not having been served) and the several insurance companies, through their respective counsel, have appeared specially, and deny the power of the court to issue the injunction prayed for in this case, or, indeed, the jurisdiction of the court to entertain the case at all. The Puget Sound National Bank was not named until the filing of the amended bill, being then substituted for John Doe. The corporation being domiciled at, and a resident of, the state of Washington, it was sought to bring it before the court by serving an alias subpœna on a law firm of this city. An affidavit had been made by one Robert Levy to the effect that Messrs. Rothschild & Ach, attorneys at law, practicing in the city and county of San Francisco, and elsewhere, had been retained to represent the Puget Sound National Bank in this controversy. Upon this affidavit, the court made an order that a substituted service be made on the company by serving the alias subpœna on the law firm designated. Service was also made upon one of the directors of the corporation, who was within the district. Rothschild & Ach appeared specially, and moved to set aside the service on them, on the ground that the court was without jurisdiction to enter such order. This question has been fully argued, and the court has arrived at the conclusion that the motion to set aside the substituted service should prevail. The reasons therefor will be found indicated in my opinion upon the motion to set aside the substituted service.[1] The result is that the Puget Sound National Bank is not now before the court, and cannot be made a party unless it appears voluntarily. In disposing of the objections presented to the order to show cause why an in-

[1] 69 Fed. 701.

junction should not issue, the attitude of the various respondents before the court, as stated in the bill, should be kept in mind. The insurance companies form one group. Harris Lewis, I. J. Lewis, and D. S. Davids, and the Puget Sound National Bank, if it were in court, form another. It is sought to prevent the former from paying to the latter. The insurance companies occupy, to all intents and purposes, the position of interpleaders, who have in their possession the fund which complainant seeks to reach, and to prevent Lewis and others from getting. The respondents Lewis and Davids present the following objections to the issuance of the injunction against them: First, that it appears from the amended complaint that the complainant is not a party in interest in this action; second, that it appears that the court has no jurisdiction of the subject-matter of the action; third, that the complainant has an adequate remedy at law; fourth, that the court has no jurisdiction over the respondents; fifth, that the complainant has been guilty of laches, and that the alleged cause of action is barred by the statutes of limitations.

Taking these objections up in their order, I am of opinion that the complainant has unquestionably the right to sue. His statutory right is found in sections 5046, 5047, Rev. St. U. S. He is the duly-appointed and qualified and acting assignee of the estate of the bankrupt firm of Schoenfeld, Cohen & Co. The fact that a receiver has been appointed in suit No. 231, upon the creditors' bill, to receive all of Harris Lewis' property, and that the legal title to all of Lewis' property, real and personal, and the profits, incomes, and gains thereof, was, by the order of this court, vested in Ralph L. Shainwald, does not impair or diminish the independent right of the assignee to bring any and all suits which concern the estate or trust of which he has been appointed assignee. While it may be conceded that the receiver has the legal title to Lewis' property, yet the complainant, as assignee, has an equitable title which he may enforce in a court of equity. The appointment of a receiver, and the passing of the legal title to him, to assist in the collection of the assets of the estate of the bankrupt firm, which were decreed to be held in trust by Harris Lewis by the judgment of this court in suit No. 221, as revived in No. 241, does not interfere with the paramount rights, powers, and duties of the assignee in preserving, protecting, and collecting the assets of the estate. Such fact does not have the effect to render him a mere supernumerary, nor should it hamper him in any way from doing his whole duty. Besides, a sufficient showing is made in the bill, under equity rule 22 of the supreme court of the United States, to excuse the failure to make the receiver a party.

As to the second objection, viz. that the court has no jurisdiction of the subject-matter of the action, I also entertain no doubt. The jurisdiction of this court as a court of bankruptcy, conferred by the bankruptcy act (Act March 2, 1867), and reproduced in section 4972 of the Revised Statutes, extends, among other things; to: "Second. To the collection of all the assets of the bankrupt,"—and: "Sixth. To all acts, matters, and things to be done under and in virtue of

the bankruptcy, until the final distribution and settlement of the
estate of the bankrupt, and the close of the proceedings in bankruptcy." The bill in the present case could come within either of
these subdivisions. It is a suit to collect "the assets of the bankrupt," and it has direct reference to "acts, matters, and things to
be done under and in virtue of the bankruptcy, until the final distribution and settlement of the estate of the bankrupt," etc. The
bill seeks to stamp certain personal property as trust funds. This
trust fund, it is claimed, is part of the assets of the firm of Schoenfeld, Cohen & Co., or the proceeds or profits thereof, of which Harris
Lewis has been adjudged, by the solemn decree of this court, to be
trustee for the benefit of the assignee of the bankrupt firm and of
its creditors. Nor did the repeal of the bankrupt act impair or take
away the right to institute these proceedings. Suits of this character were expressly saved and authorized by the act to repeal the
bankrupt law (Act June 7, 1878; 20 Stat. p. 99).

The third objection, viz. that the complainant has an adequate
remedy at law, is answered by the fact that the bill seeks a discovery, a subject peculiarly of equitable cognizance. Moreover, it
is sought to impress a trust character on certain personal property,
and this alone would give the court jurisdiction as a court of equity.
Oelrichs v. Spain, 15 Wall. 211, 228. Furthermore, the complainant
holds the equitable title to the assets of the firm for the benefit of
the creditors thereof, and this suit seeks to reach property claimed
to constitute such assets.

The fourth objection, viz. that the court has not jurisdiction over
the respondents, is important in so far as the absence of the Puget
Sound National Bank of Seattle, the pretended assignee, may be
deemed fatal to any further proceedings against the remaining respondents. This is really the only question of any serious moment
in the case, and, for the sake of convenience, it will be considered
further on in connection with the objections urged by the insurance
companies to the jurisdiction of the court because of a defect of
parties.

The last objection presented by counsel for Lewis and Davids is
that the complainant has been guilty of laches. Section 5057 of
the Revised Statutes is cited. It provides:

"That no suit, either at law or in equity, shall be maintainable in any court
between an assignee in bankruptcy, and a person claiming an adverse interest, touching any property or rights of property transferable to or vested
in such assignee, unless brought within two years from the time when the
cause of action accrues for or against such assignee."

There is, however, a well-settled qualification to this rule, viz.
that, where there has been fraud in concealing the cause of action,
the right to sue runs only from the date of the discovery of the
fraud, or, what is held to be the equivalent of knowledge, being in
possession of facts which ought to put a reasonable man on inquiry.
As was said in Yancy v. Cothran, 32 Fed. 687, 689, in interpreting
the above section:

"The courts have, however, ingrafted on this act the recognized rule, as to
statutes of limitation, that if the facts on which any right of action is based

have been fraudulently concealed by the parties in interest, or if the fraud is of such character as conceals itself, the statute will only commence to run from the date of the discovery of the fraud, or of such information as, if diligently followed up, would discover it."

The following cases are cited to sustain this proposition: Carr v. Hilton, 1 Curt. 390, Fed. Cas. No. 2,437; Bailey v. Glover, 21 Wall. 342; Upton v. McLaughlin, 105 U. S. 640; Rosenthal v. Walker, 111 U. S. 185, 4 Sup. Ct. 382. See, also, Martin v. Smith, 1 Dill. 85, 102, Fed. Cas. No. 9,164; Cook v. Sherman, 20 Fed. 168.

The complainant asserts in his bill that the fraudulent concealment by Harris Lewis of the assets of the bankrupt firm, or of their proceeds, was not discovered until three months previous to the bringing of this action. He therefore brings himself within the limitation of the rule referred to, and the court, for the purposes of this motion, must so consider it.

We now recur to the fourth objection, presented by Lewis and Davids, which is substantially the same as that raised by the insurance companies, viz. the defect of a necessary party,—the Puget Sound National Bank of Seattle. It is claimed that Davids & Co. has assigned said policies of insurance to the Puget Sound National Bank for a consideration; that such assignments were made in the months of November and December, 1894; that, as this court has not jurisdiction of the assignee, no order made in this proceeding will be binding on said assignee, or in any wise protect these respondents, or any of them, from the demand of said assignee under said assignment. It is further claimed, as to two of the respondent insurance companies,—the Royal Exchange Assurance Company and the Home Insurance Company,—that the moneys in their hands due to said Davids & Co., or their assigns, and the debt due and owing from it to said Davids & Co. under their polices of insurance, in said order to show cause mentioned, were, in the state of Washington, attached by writ of attachment duly issued out of the superior court of the state of Washington, county of King, in a suit pending in said court, wherein the United States Clothing Company was plaintiff, and Davids & Co. were defendants; the said writ being intended for the purpose of securing to the United States Clothing Company payment to it of a demand by it made and asserted against said Davids & Co. It is claimed that the United States Clothing Company is an indispensable party, and that because it is a resident of another state, and not amenable to the process of this court, it cannot be made a party unless it should appear voluntarily. With respect to this claim, it is sufficient to say that it does not appear how funds in the possession of the companies in San Francisco could be attached by the service of a notice of garnishment on the agent of the companies at Seattle. If, as is alleged in the bill, the funds out of which such insurance moneys are to be paid is within the jurisdiction of the court, it has plenary power to enjoin the payment thereof, and preserve the fund intact until the rights of the respective parties have been adjudicated upon. The further contention is also made that, since the policies of insurance are made out

in favor of Davids & Co., and the assignment, if such was in fact made, was in the name of that firm, this court cannot proceed against the firm, for the reason that it is a resident of and does business in, another district. On the other hand, it is claimed that if said policies were really not for the benefit of Davids & Co., but for the benefit of Harris Lewis, the policies are void, the contract of insurance being a personal one. With reference to this alternative contention, it would seem to be met squarely by the averments in the bill that the use of the firm name and style of Davids & Co. was part of the fraudulent scheme to conceal from the assignee the true character of the assets and trust funds then being utilized by Lewis for his own benefit and gain, and was done for the express purpose of defrauding said assignee and the creditors. The mere fact that the policies were made out in the name of Davids & Co. must be treated, therefore, as immaterial. If the facts set out in the bill be true, the style of Davids & Co. was intended simply as the firm name. The insurance companies intended to and did insure Davids & Co., of which Harris Lewis, as alleged, was the real and sole owner. The whole question resolves itself into this proposition: Are the averments of fraud as to the colorable and pretended assignment to the Puget Sound National Bank sufficient to justify this court in proceeding further with the case, and, during its pendency, to grant the injunction prayed for, in the absence of that corporation? It may be conceded that, if there were no allegations of fraud as to this assignment, the court would decline to proceed without the presence of the assignee of these policies, and would treat such assignee as an indispensable party. But the court cannot, at this stage of the proceedings, ignore the allegations contained in the bill. For the purposes of this motion, the facts therein set forth must be taken as true. Minnesota Co. v. St. Paul Co., 2 Wall. 609, 632. The best criterion as to the merit of the allegations in the bill is to consider what the course of the court probably would be, assuming that such a state of facts as is alleged were proved. Would the court permit itself to be imposed on by colorable and fictitious assignments? Would it allow parties, by fraud or collusion, to deprive it of its jurisdiction, to the detriment of its own citizens seeking to enforce their rights in their own forum? Would it suffer itself to be ousted of its jurisdiction by reason of the nonresidence of the transferees, to whom the transfer had been fraudulently made for the purpose of depriving the court of its cognizance over the case, the real title remaining all the time in the original owner, who is subject to the jurisdiction of the court? Unquestionably not. Bank v. Stafford, 12 How. 327; Banking Co. v. Stafford, Id. 343; Ward v. Arredondo, 1 Paine, 410;[1] Bank v. Cooper, 120 U. S. 778, 7 Sup. Ct. 777; Fost. Fed. Pr. pp. 102, 103, §§ 54, 59. A court, and particularly a court of equity, will look through the mere surface and form of the transaction, and scrutinize closely the merits and substance. If the allegations of the bill be true, the Puget

[1] Fed. Cas. No. 17,148.

Sound National Bank is not a party to this suit. The truth of the allegations in this regard involves the jurisdictional question. The court must proceed far enough into the merits of the case to enable it to decide that question. Ward v. Arredondo, supra. And, until it can do so, it is a matter of the very first importance to the complainant that the property or fund in dispute should be kept inviolate and in statu quo. Otherwise, if he should finally be held entitled to recover, any diversion or diminution of the fund might be to his irreparable injury, as alleged in the bill. In Great Western Ry. Co. v. Birmingham & O. J. R. Co., 2 Phil. Ch. 602, Lord Cottenham said:

"It is certain that the court will, in many cases, interfere and preserve property in statu quo during the pendency of the suit in which the rights are to be decided, and that without expressing, and often without having the means of forming, any opinion as to such rights. * * * It is true, the court will not so interfere if it thinks that there is no real question between the parties; but, seeing that there is a substantial question to be decided, it will preserve the property until such question can be regularly disposed of."

See, also, Glascott v. Lang, 3 Mylne & C. 455.

The court must accept the averments of the bill as true until the contrary is established. As they appear, they are sufficient to justify the continuance of the restraining order. The objections to the bill and order are, therefore, overruled. and the further hearing of the order continued.